UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER M., | |
| Plaintiff, | |
| v. | No. 23 CV 2219 |
| FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY, | Magistrate Judge McShain |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer M. appeals the Commissioner of Social Security's decision denying her applications for benefits. For the following reasons, plaintiff's motion to reverse or remand the Commissioner's decision [20] is denied, the Commissioner's motion for summary judgment [25] is granted, and the denial of benefits is affirmed.[1]

**Background**

In March 2015, plaintiff applied for disability insurance benefits and supplemental security income, alleging an onset date of April 28, 1982. [14-1] 17. The claims were denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 17-30. After the Appeals Council denied review in January 2019, *see* [*id.*] 1-5, plaintiff appealed to this Court, and the Court granted the parties' agreed motion to reverse and remand. [*Id.*] 731. In May 2022, the ALJ again denied plaintiff's claims. [*Id.*] 638-55. The Appeals Council denied review in March 2023, *see* [*id.*] 623-28, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff has again appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had engaged in substantial gainful activity in 2019, 2020, and part of 2021,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14-1], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [10].

but that there was an otherwise unadjudicated period. [14-1] 641. At step two, the ALJ determined that plaintiff had the following severe impairments: Turner syndrome with heart murmur and nonalcoholic steatohepatitis, insulin dependent diabetes mellitus, neurodevelopment disorder, and learning disorder. [*Id.*] 642-44. At step three, the ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 644-49. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform medium work, except that plaintiff (1) could understand, remember, carry out, and sustain only routine tasks; (2) could not engage in complex tasks and could only perform the same tasks every day; (3) could not have contact with the public but can occasionally interact with supervisors and coworkers; (4) can work independently but should not have to work with others to complete tasks; and (5) could not perform work where a machine sets the pace, but can work at a variable pace. [*Id.*] 649-54. At step four, the ALJ held that plaintiff could not perform her past relevant work. [*Id.*] 654. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: sweeper/cleaner (16,345 jobs) and cleaner II (54,462 jobs). Accordingly, the ALJ found that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff argues that substantial evidence does not support the mental RFC determination because the ALJ did not rely on "a credible medical source opinion regarding the effects of [her] mental impairments on her ability to work." [20] 7. Plaintiff emphasizes that the state agency reviewers evaluated her mental RFC in late 2015 and early 2016, before the agency adopted new "paragraph B" criteria for evaluating the severity of a claimant's mental impairments. Because the ALJ supposedly failed to explain how she weighed these opinions, which were based on "obsolete" criteria, plaintiff contends that the ALJ crafted the RFC "out of whole cloth." [*Id.*]; *see also* [28] 1-3. The Court rejects this argument for multiple reasons.

2

The ALJ's RFC assessment "must incorporate all of the claimant's limitations supported by the medical record." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Cox v. Berryhill*, No. 2:16-CV-156-PRC, 2017 WL 3911527, at *3 (N.D. Ind. Sept. 7, 2017) (internal quotation marks omitted). In assessing the claimant's mental RFC, "the ALJ must consider–but [is] not required to adopt–the findings of state-agency psychologists." *Monday v. Comm'r of Soc. Sec.*, Case No. 4:23-CV-96-JD, 2025 WL 865146, at *4 (N.D. Ind. Mar. 20, 2025) (internal quotation marks omitted).

First, "[a]n ALJ is not required to adopt a specific physician opinion in crafting an RFC[.]" *Arthur P. L. v. Comm'r of Soc. Sec.*, Case No. 3:23-CV-111-MGG, 2024 WL 1252272, at *4 (N.D. Ind. Mar. 22, 2024); *accord Marva S. v. O'Malley*, No. 21 CV 5922, 2025 WL 27490, at *5 (N.D. Ill. Jan. 3, 2025) ("The ALJ is not required to support her RFC determination with a specific medical opinion[.]"); *Timothy L. v. Dudek*, No. 22 CV 6799, 2025 WL 1371440, at *2 (N.D. Ill. May 12, 2025) (collecting cases and affirming denial of benefits where ALJ ruled that "only opinion evidence in the record" was unpersuasive but relied on substantial evidence, including treatment notes and claimant's statements, to find that claimant could perform medium work). Indeed, the ALJ is not even required to base the RFC on a state agency reviewer's opinion. *Accord Monday*, 2025 WL 865146, at *4. Thus, even accepting plaintiff's claim that the state agency reviewers' opinions here were "obsolete" and should not have been given any weight, that alone would not require a remand.

Second, plaintiff has not cited a single case to support her argument that, because the state agency reviewers used "obsolete" criteria to evaluate the severity of her mental impairments, the ALJ could not rely on those opinions. When the agency doctors assessed plaintiff's mental RFC in 2015 and 2016, they were required to consider, as part of their "paragraph B" analysis, whether plaintiff (1) could perform activities of daily living; (2) had any difficulties maintaining social functioning; (3) could maintain concentration, persistence, or pace; and (4) experienced repeated episodes of decompensation, including any episodes of extended duration. *See* [14-1] 102, 130; *see also* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 2, 2016) (discussing changes). For cases decided after January 17, 2017, a state agency reviewer assesses the severity of a claimant's mental impairments by considering the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *See* 20 C.F.R. §§ 404.1520a(c)(4) & 416.920a(c)(4). While the Court accepts that the criteria used by the agency reviewers was "obsolete" in the narrow sense that the agency now employs different criteria to rate the severity of a claimant's mental impairments, the Court also recognizes the obvious similarity between the two sets of criteria. Indeed, a review of the agency doctors' opinions shows that they specifically considered the very subject matter

3

addressed by the current paragraph B criteria: plaintiff's "understanding and memory limitations," her "social interaction limitations," her "sustained concentration and persistence limitations," and her "adaptation limitations." [14-1] 105-06, 117-18. Given that overlap, as well as the ALJ's reasonable explanation of how she weighed the agency doctors' opinions (discussed immediately below), the Court cannot accept plaintiff's claim that the ALJ impermissibly "played doctor" when she "attempt[ed] to craft" an RFC determination "based on [her] own lay interpretation of what the obsolete opinions *may mean* under the current framework." [28] 2 (emphasis in original).

Third, and in any event, the ALJ recognized that the agency reviewers had used outdated criteria to assess the severity of plaintiff's mental impairments but adequately explained how she had factored those opinions into the RFC determination:

> The undersigned gives some with [*sic*] to the State Agency as to mental limitations, though notably the State Agency used obsolete criteria. The undersigned considered the State Agency observation of the claimant having problems with working at a consistent pace when precluding work where a machine sets the pace of work, and also limited her to work at a variable pace, where performance is measured by what is completed by the end of the workday, noting that the claimant is able to perform work at the substantial gainful activity level since claiming disability as seen by earnings and testimony at the hearing. As noted in some records, the claimant might have some difficulty with social interactions and this is considered by the undersigned to limit contact with others for work purposes. The State Agency determined the claimant might have limited capacity to cope with changes and set realistic goals, and this is considered to limit her to perform the same tasks day in and day out so she would not have to cope with changes in work tasks/processes/procedures and, as she would be doing the same work daily, she not [*sic*] have to set realistic goals on a regular basis.

[14-1] 653.

Contrary to plaintiff's claim that the ALJ gave "no indication of what limitations were accepted or rejected" [20] 9, the ALJ expressly credited the state agency reviewers' findings about plaintiff's difficulties working at a consistent pace and coping with changes in the workplace. She then crafted an RFC determination that restricted plaintiff to work that entailed performing the same tasks every day at a variable pace. Because the ALJ was "subject to only the most minimal of articulation requirements," *Warnell*, 97 F.4th at 1053, this discussion suffices to permit the Court to understand how the ALJ weighed the agency doctors' opinions.

4

Fourth, plaintiff's argument ignores the ALJ's detailed evaluation of the paragraph B criteria, which the ALJ undertook at step three of her decision. There the ALJ found, *inter alia*, that plaintiff (1) had engaged in lengthy periods of substantial gainful activity, notwithstanding her severe mental impairments; (2) could sufficiently understand, remember, or apply information to work at the semi-skilled level; (3) had intact short-term memory and repeatedly demonstrated to her primary care provider that her "memory function was normal"; (4) could sufficiently interact with others to maintain employment as a cashier; and (5) denied symptoms of depression and was observed at a consultative psychological exam to have a normal emotional presentation. *See* [14-1] 645-49. While the ALJ's findings in this section of her decision "are not a residual functional capacity assessment" [*id.*] 649, they obviously informed the ALJ's decision that plaintiff had the mental RFC to perform simple work. *See Troy B. v. Kijakazi*, Case No. 3:21-CV-50325, 2023 WL 374300, at (N.D. Ill. Jan. 24, 2023) (ALJ's paragraph B findings "inform the ALJ's mental RFC assessment used at steps four and five," although RFC determination requires more detailed analysis). And because plaintiff has not challenged any of the ALJ's findings in this regard, the Court cannot conclude that the decision lacks substantial evidentiary support.

Finally, and contrary to plaintiff's argument, this was not a case where the ALJ's handling of the opinion evidence created an "evidentiary deficit" that left the ALJ to "play doctor." "Courts in this District have recognized that an ALJ's decision to discount all medical opinion evidence in the record can create an evidentiary gap that renders the ALJ's RFC unsupported by substantial evidence. But reversible error occurs only when the ALJ, after rejecting the opinion evidence, crafts an RFC determination that is untethered to any record evidence." *Timothy L.*, 2025 WL 1371440, at *2 (internal quotation marks and citations omitted). To begin, the ALJ did not reject all opinion evidence in the case. Rather, she minimally articulated which parts of the agency reviewers' opinions supported her RFC determination. Furthermore, the ALJ did not try to interpret raw medical data, such as an x-ray or MRI, without expert assistance. *Cf. Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *5 (N.D. Ill. Dec. 23, 2020) ("it is for doctors, and not ALJs to interpret x-rays, MRIs, and other raw medical data, even if those scans appear to be mild or unremarkable"). Instead, like in any other disability case, the ALJ permissibly reviewed the medical record and weighed the opinion evidence to formulate plaintiff's RFC.

5

## Conclusion

Plaintiff's motion to reverse or remand the Commissioner's decision [20] is denied, the Commissioner's motion for summary judgment [25] is granted, and the denial of benefits is affirmed

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 26, 2025**